[No. 5131.]
[No. 2721 C. A.]

THE PLUMMER MERCANTILE COMPANY v. HENDERSON.

**Principal and Agent—Factors—Rights as to Third Persons—Sale of Goods.**

Where the owner of goods stored them with a warehouse company and authorized the latter to sell for cash to defendant, and the warehouse company delivered a.portion of the goods on time to defendant, and, on his failure to pay, sold all the goods and paid the owner in full, the warehouse company, or its assignee, was entitled to maintain an action against defendant for the goods sold to him.—P. 94.

*Error to the District Court of Arapahoe County. Hon. F. T. Johnson, Judge.*

Action by Milton J. Henderson against The Plummer Mercantile Company. From a judgment in favor of plaintiff, defendant appeals. *Affirmed.*

Mr. EZRA KEELER, for appellant.

Mr. JOHN P. MAULE, for appellee.

The complaint in this case set out in substance that The Denver Public Warehouse Company is a corporation organized for the purpose of storing merchandise for hire, and selling the same for the owners on commission, and that The Plummer Mercantile Company is a corporation organized for the purpose of trade; that on the 9th day of January, A. D. 1901, Strasbaugh-Steckel-Hewitt Company, a corporation of Baltimore, Maryland, stored with the warehouse company 500 cases of tomatoes for sale. Through the solicitation of the warehouse company, the defendant, the mercantile company, offered to purchase the tomatoes at $1.75 per case, less one and one-half per cent. discount for cash, payment and delivery to be made on March 9, 1901. This offer was submitted to the Baltimore company, which ac-

cepted the offer by wire. Upon being informed of the acceptance, the defendant earnestly requested the warehouse company to deliver the tomatoes without payment of the purchase price, promising to make payment on March 9th. That the warehouse company, without authority, did deliver to the defendant 145 cases. The Baltimore company drew on defendant for the purchase price of the 500 cases, which draft was presented March 9th. Defendant refused to pay the draft, and it was returned. The Baltimore company refused to ratify the delivery of the 145 cases, or to look to defendant for/payment, but demanded payment from the warehouse company. Thereupon the warehouse company sold the balance of the 500 cases, and paid the Baltimore company for the whole 500 cases. It then demanded payment for the 145 cases. Payment was refused. The appellee (plaintiff below) who was manager of the warehouse company, and was responsible for the unauthorized delivery of the 145 cases, paid the warehouse company therefor, and took an assignment of its claim.

To the complaint a demurrer was filed, which was overruled, and defendant, electing to stand by its demurrer, judgment was rendered against defendant in accordance with the prayer of the complaint. From this judgment defendant appeals.

Mr. JUSTICE GODDARD delivered the opinion of the court:

It is contended by counsel for appellant that the warehouse company did not acquire the right to sue for the purchase price of the goods delivered, notwithstanding it paid the owners therefor, on account of its unauthorized act as agent, and consequently, by its assignment to the appellee, did not vest such right in him. That the payment on its part was voluntary, without the request or knowledge of the

Baltimore company. It is expressly averred that, upon the refusal of appellant to pay the draft, and its return, the drawers refused to ratify the delivery of the 145 cases to the defendant, or to look to it for payment, but demanded same of the warehouse company. ·

In making payment to the Baltimore company in pursuance of this demand, the warehouse company did· what the law would have compelled it to do´ under the circumstances. The delivery of the goods was in violation of the agreement made between the Baltimore company and the appellant, and therefore was unauthorized and wrongful on the part of the warehouse company, but was made at the earnest solicitation of the appellant and upon its promise to make payment on March 9. In these circumstances, the warehouse company was entitled to recover the agreed price for the tomatoes delivered to appellant regardless of whether it had, or had not, paid the same to its principal.—*Kent v. Bornstein*, 94 Mass. 342.

In this case an agent who had authority only to sell the goods belonging to his principal and to pay over the proceeds therefrom to his principal, exchanged some of the money in his possession received for the sale of the goods for a counterfeit bill. Bigelow, chief justice, after stating the nature of the authority of the agent and his duty in the premises, said:

"In this state of the evidence, it is clear that the plaintiff exceeded his authority in exchanging the smaller bills in his possession for one of the denomination of fifty dollars, and he is liable to his employer for the loss occasioned by his unauthorized act. It does not appear that the transaction has been ratified by the principal. For aught that we can know, the plaintiff is still liable· for the amount of

the genuine bills which he exchanged for the counter-feit one. . It cannot therefore be said that the plaintiff has no beneficial interest in the cause of action on which this suit is brought. On the contrary, it plainly appears that his right to recover in this action is the only mode in which he can indemnify himself against the rightful claim of his employer for the loss caused by his abuse of the authority entrusted to him.''

The warehouse company, having assigned its right of action to the plaintiff, he was clearly entitled to maintain the action. The judgment is therefore affirmed.                                   *Affirmed.*

Chief Justice Gabbert and Mr. Justice Bailey concur.